IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WORD MUSIC, LLC., a Tennessee Limited Liability Company, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) ) | CASE NO. 3:09-0411 JUDGE CAMPBELL/KNOWLES |
| Lynns Corp. of America, a California corporation, et al., | ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Plaintiffs' "Motion for Partial Summary Judgment (Liability Only)." Docket No. 101. Plaintiffs have filed a supporting Memorandum (Docket No. 120) and numerous Exhibits. Defendant Lynns Corp. of America and its principal, Victor Tsai, (the "Lynns Corp. Defendants") have filed an "Opposition to Plaintiffs' Motion for Partial Summary Judgment (Liability Only)" (Docket No. 164) and a supporting Memorandum (Docket No. 164-1). These Defendants, however, concede that Plaintiffs are entitled to summary judgment on at least some of their claims. Defendants Michael Lee and Sumakaya Corporation (the "Lee Defendants") have filed a Response denying that Plaintiffs are entitled to summary judgment. Docket No. 166. Plaintiffs have also filed a Reply. Docket No. 170.

This is a copyright infringement case involving karaoke music. Plaintiffs' Amended Complaint avers that they are the owners of a number of music copyrights and that Defendants

engaged in the commercial exploitation of those copyrights without licensing when they engaged in the advertising, distribution, and sale of unlicensed karaoke discs.  According to the Amended Complaint, Defendants Lynns Corp. and Tsai manufactured, distributed, advertised, and sold the infringing karaoke recordings at issue.  Docket No. 92, p. 5.  Plaintiffs also allege that Defendant Lynns Corp. distributed infringing works through interactive Internet websites known as "Sumakaya.com," "Sumakaraoke.com," and "Karaoke123.com."  Plaintiffs aver that the "Sumakaya.com" website was owned and operated by the Lee Defendants until during or about August 2007, at which time the Lynns Corp. Defendants began operating it.

## II.  Facts

The following facts are undisputed and, except as otherwise noted, are in a form required by Fed. R. Civ. P. 56.

### A.  Burnett Declaration

Kelly L. Burnett is the Director, Legal & Business Affairs, at Warner/Chapel Music, Inc., which manages the administration of the copyrights to the Subject Works identified in Plaintiffs' Amended Complaint.  Docket No. 108, p. 2 (Declaration of Kelly L. Burnett).  Warner/Chapel Music, Inc., is the parent company and/or administrator of Plaintiffs.  Ms. Burnett has provided, with her Declaration, true and correct copies of the copyright registrations for the Subject Works.

Since the filing of this action, Plaintiffs have lost their ownership/administration rights, for various reasons, to 17 of the songs that were part of the original Subject Works identified in the Amended Complaint, and Plaintiffs are not seeking a judgment for copyright infringement against either set of Defendants for the 17 songs, which are titled:

      a.  Eighth of November
      b.  All Jacked Up

2

       c. California Girls
       d. Evergreen
       e. For You I will
       f. Here for the Party
       g. Holy Water
       h. If It Makes You Happy
       i. Little Girl
       j. Not Bad for A Bartender
       k. Redneck Woman
       l. So Far Away
       m. Soak Up the Sun
       n. Sunshine of Your Love
       o. Then Again
       p. Wild West Show
       q. Yellow Bird[1]

According to the Exhibits to the Amended Complaint, the infringing works were distributed on the following brands: "Chart Buster," "Karaoke Klub," "Back Stage," "Nutech," "Music Maestro," "Magic Tracks," and "Hot Stuff."[2] Docket No. 82, Exhibits A-G. No licenses were issued to any of the Defendants or to the manufacturers of the brands identified as "Karaoke Klub," "Backstage," "Nutech," "Music Maestro," "Hot Stuff," or "Magic Tracks." Docket No. 108, p. 5. With respect to the "Chart Buster" brands, which is manufactured by Tennessee Production Center, Inc. ("TPS"), conditional licenses were issued pursuant to settlements for claims of copyright infringement that were the subject of litigation in the United States District Court for the Eastern District of Tennessee. The conditional licenses that were issued became null and void as a result of TPC's default under the accompanying Settlement

---

[1] The undersigned's recommendations below, therefore, do not apply to these 17 songs.

[2] The Exhibits to Plaintiffs' original Complaint, A-E, involve the following brands: "Chart Buster," "Karaoke Klub," "Backstage," "Nutech," and "Music Maestro." Docket No. 1. Plaintiffs' Amended Complaint added the brands: "Magic Tracks," and "Hot Stuff." Docket No. 92.

3

Agreements, and therefore, the "Chart Buster" brand of discs was also unlicensed during the relevant three year time frame in this case. Docket No. 108, p. 5.

The Court will focus below on the undisputed facts that have been established in the Requests for Admissions that Plaintiffs submitted to both sets of Defendants.[3]

## B. Lynns Corp. Defendants

The Lynns Corp. Defendants are not parties to any licenses issued by Plaintiffs or their agents, covering the period from May 8, 2006, to the present for each of the music copyrights listed on Exhibits A-E to the Complaint for Injunction and Damages. Docket Nos. 106-7, p. 7; 106-8, p. 7. Neither of the Lynns Corp. Defendants is a party to any licenses issued by Plaintiffs or their agents covering the period from May 8, 2006, to the present permitting them to participate in advertising, distributing, or selling the karaoke discs branded "Magic Tracks" and "Hot Stuff." Docket No. 106-7, p. 8; 106-8, p. 8.

Lynns Corp. has advertised, distributed and sold the brands of karaoke recordings containing the music copyrights identified on Exhibits A-E to the Complaint and the brands "Magic Tracks" and "Hot Stuff," utilizing each of the music copyrights identified therein during the period from May 8, 2006, to the present. Docket No. 106-8, p. 8-9. Furthermore, the Lynns Corp. Defendants know of no facts to dispute the percentages of ownership and/or administration rights claimed by the Plaintiffs with respect to the copyrights identified in the Complaint filed in

---

[3] Pursuant to prior Orders, the Requests for Admissions to the Lynns Corp. Defendants have been deemed admitted. Docket Nos. 155, 182. The Lee Defendants did not respond at all to Plaintiffs' Requests for Admissions, so these matters have been admitted pursuant to Fed. R. Civ. P. 36(a)(3). Docket No. 170, p. 4. Thus, with regard to both sets of Defendants, these matters have been "conclusively established." Fed. R. Civ. P. 36(b); *Hickory Specialties, Inc. v. Forest Flavors, Int'l., Inc.,* 12 F. Supp. 2d 760, 770-71 (M.D. Tenn. 1998)(Wiseman, J.).

this cause and Exhibits A-E attached thereto. Docket No. 106-7, p. 9; 106-8, p. 5.

The Lynns Corp. Defendants, prior to May 8, 2009, had not received or demanded any copies of any licenses from their third-party manufacturer/suppliers prior to purchasing karaoke recordings from them and reselling them. Docket No. 106-7, p. 10; 106-8, p. 10-11.

Neither of the Lynns Corp. Defendants is a party to any prior settlement and/or release of Plaintiffs' claims, as alleged in its Answer to the Complaint filed in this case. Docket No. 106-7, p. 11; 106-8, p. 12.

Defendant Tsai was the sole officer, director and shareholder of Lynns Corp. during the period from May 8, 2006, to May 8, 2009. Docket No. 106-8, p. 12. Defendant Tsai was the ultimate authority for making decisions at Lynns Corp. with regard to the products that were advertised, distributed, and sold by Lynns Corp. for the period from May 8, 2006, to May 8, 2009. Docket No. 106-7, p. 12. Specifically, Defendant Tsai participated as a decision maker at Lynns Corp. relative to the advertising, distribution, and sale of the karaoke recordings containing the music copyrights identified on Exhibits A-E to the Complaint and of the karaoke discs branded "Magic Tracks" and "Hot Stuff," utilizing each of the music copyrights identified therein during the period from May 8, 2006, to May 8, 2009. Docket No. 106-7, p. 8-9. Mr. Tsai
participated as a decision-maker at Lynns Corp., relative to the advertising, distribution and sale of the karaoke recordings containing the music copyrights identified on Exhibits A-E to the Complaint utilizing each of the music copyrights identified therein during the period from May 8, 2006, to May 8, 2009. Docket No. 106-7, p. 8. Defendant Tsai personally participated in the decision of Lynns Corp. to engage in the business of selling the brands of karaoke recordings

5

and musical copyrights associated therewith which are identified on Exhibits A-E of Plaintiffs' Complaint. Docket No. 106-8, p. 13. Defendant Tsai personally participated in the decision of Lynns Corp. to market the karaoke recordings at issue for the period from May 8, 2006, to May 8, 2009, without first insisting on written proof of licensing from the manufacturers of the products. Docket No. 106-8, p. 13.

Defendant Tsai was the ultimate authority for making the decision of Lynns Corp. to engage in the business of advertising, distributing and selling karaoke discs bearing the brands of "Hot Stuff" and "Magic Tracks" during the period from May 8, 2006, to May 8, 2009. Docket No. 106-8, p. 15.

Defendant Tsai personally benefitted financially from the sales by Lynns Corp. of the unlicensed karaoke recordings bearing the brands identified on Exhibits A-E of the Complaint, as well as those bearing the brands of "Hot Stuff" and "Magic Tracks," based upon sales during the period from May 8, 2006, to May 8, 2009. Docket No. 106-8, p. 15.

Finally, neither Defendant Tsai nor Defendant Lynns Corp. has any factual or legal basis to support Affirmative Defenses 1-6 or 8-11 raised in their First Amended Answer (Docket No. 34). Docket No. 106-7, p. 14-18; 106-8, p. 15-18. The Lynns Corp. Defendants' purported "Twelfth Affirmative Defense" does not bar Plaintiffs' claims for copyright infringement against Lynns Corp. Docket Nos. 106-7, p. 17; 106-8, p. 19.

### C. Lee Defendants

Neither of the Lee Defendants is a party to any licenses issued by Plaintiffs or their agents covering the period from May 8, 2006 , to at least August 2007, for each of the music copyrights listed on Exhibits A-E to the Complaint, or for the brands "Magic Tracks" and "Hot

Stuff."  Docket No. 106-4, p. 6; 106-5, p. 6.

Neither Sumakaya nor Lee knows of any facts to dispute the percentages of ownership and/or administration rights claimed by the Plaintiffs with respect to the copyrights at issue. Docket No. 106-4, p. 7; 106-5, p. 7.  Neither Sumakaya nor Lee, prior to May 8, 2009, had demanded or received copies of any licenses from its third-party manufacturer/suppliers prior to purchasing karaoke recordings from them and reselling them.  Docket No. 106-4, p. 7-8; 106-5, p. 7-8.  Neither Sumakaya nor Lee is a party to any prior settlement and/or release of Plaintiffs' claims, as alleged in their Answer.  Docket No. 106-4, p. 8; 106-5, p. 8.

Both Sumakaya and Lee have advertised, distributed, and sold the brands of karaoke recordings containing the music copyrights identified on Exhibits A-E to the Complaint, as well as the brands "Magic Tracks" and "Hot Stuff" utilizing each of the music copyrights identified therein during the period from May 8, 2006, to at least August 2007.  Docket Nos. 106-4, p. 7; 106-5, p. 7.

From May 8, 2006, to August 1, 2007, Defendant Lee was the sole officer, director, and shareholder of Sumakaya Corporation.  Docket No. 106-4, p. 8; 106-5, p. 8.  Defendant Lee was the ultimate authority for making decisions at Sumakaya with regard to the products which were advertised, distributed, and sold by Sumakaya for the period from May 8, 2006, to August 1, 2007.  Docket No. 106-4, p. 8; 106-5, p. 8.  Defendant Lee personally participated in the decision of Sumakaya to engage in the business of selling the brands of karaoke recordings and music copyrights associated therewith which are identified on Exhibits A-E of the Complaint for the period from May 8, 2006, to August 1, 2007.  Docket No. 106-4, p. 9; 106-5, p. 8-9.  Defendant Lee personally participated in the decision of Sumakaya to market the karaoke recordings at

7

issue. Docket No. 106-4, p. 9; 106-5, p.8-9. Defendant Lee personally participated in the decision of Sumakaya to engage in the business of advertising, distributing, and selling the music copyrights identified on Exhibits A-E of the Complaint for the period May 8, 2006, to August 1, 2007, without first insisting on securing licensing from the music publishers or their agents. Docket No. 106-4, p. 8; 106-5, p. 9. Defendant Lee was the ultimate authority for making the decision of Sumakaya to engage in the business of advertising, distributing, and selling karaoke discs bearing the brands of "Hot Stuff" and "Magic Tracks," during the period from May 8, 2006, to August 1, 2007. Docket No. 106-4, p. 10; 106-5, p. 9. Defendant Lee personally benefitted financially from the sales by Sumakaya of the unlicensed karaoke recordings bearing the brands identified on Exhibits A-E of the Complaint and bearing the brands of "Hot Stuff" and "Magic Tracks" based upon sales during the period from May 8, 2006, to August 1, 2007. Docket No. 106-4, p. 10; 106-5, p. 10.

Finally, neither Defendant Michael Lee nor Defendant Sumakaya Corporation has any factual or legal basis to support any of the affirmative defenses raised in their Answer (Docket No. 14). Docket No. 106-4, p. 10-13; 106-5, p. 10-13.

### III. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91

8

L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

## IV. Defendants' Concessions

As discussed above, the Lynns Corp. Defendants do not completely oppose the instant Motion. The Lynns Corp. Defendants state in relevant part as follows:

> [The Lynns Corp.] Defendants are not contesting Plaintiffs' arguments on (1) liability for direct copyright infringement *to the extent Lynns' suppliers did not have the proper licenses*; (2) personal liability of Victor Tsai to the extent Lynns is liable for direct copyright infringement . . . .

Docket No. 164-1, p. 16 (emphasis added).

The Lynns Corp. Defendants' primary arguments are: (1) the issue of willful

infringement should not be determined on a Motion for Summary Judgment, but is a jury question; (2) there is an "issue of material fact" regarding willful infringement; and (3) it is premature to determine whether attorneys' fees are warranted but, in any event, they are not warranted.[4]  Docket No. 164-1.

The Lee Defendants concede that Sumakaya engaged in the distribution of "Plaintiffs' music."  Docket No. 166, p. 2.  Additionally, the Lee Defendants admit that Plaintiffs did not issue Lee Defendants licenses to distribute Plaintiffs's copyrighted music.  *Id*.  The Lee Defendants deny engaging in willful copyright infringement, and argue that Defendant Michael Lee should not be held personally liable for copyright infringement.  *Id*.  The Lee Defendants also state:

> Lee Defendants purchased the music at issue from Lynns Corporation of America.  Lee Defendants assumed in good faith that Lynns Corporation was duly authorized to sell Plaintiffs' music.  However, Lee Defendants admit that they did not conduct an investigation of such.  The Lee Defendants also argue that the issue of willful infringement depends upon the intent of the Defendant, which is a question of fact for a jury.

Docket No. 166, p. 5.

## V.  Analysis

### A.  Direct Copyright Infringement

To establish copyright infringement, a plaintiff must prove two elements: (1) that it owns valid copyrights in the infringing composition(s); and (2) that Defendants copied original

---

[4] The Lynns Corp. Defendants also argue that there are triable issues of material fact concerning their affirmative defenses.  Docket No. 164-1, p. 12.  As discussed above, however, the Lynns Corp. Defendants are deemed to have admitted that they have no factual or legal basis for their First through their Tenth Affirmative Defenses, and that their purported Eleventh Affirmative Defense does not bar Plaintiffs' claims for copyright infringement against them. Docket No. 106-7, p. 14-17; 106-8, p. 16-19.

elements of the composition(s) without authorization. *Feist Publications, Inc., v. Rural Tel. Ser. Co.,* 499 U.S. 340, 361.

Pursuant to 17 U.S.C. § 106(3), the owner of a copyright has the exclusive rights to distribute copies or phonorecords of the copyrighted work. Plaintiffs have established that they are the owners and/or administrators of the copyrights for the Subject Works identified in the Amended Complaint. Docket No. 108, p. 2. (Declaration of Kelly L. Burnett).

As discussed above, no licenses were issued to any of the Defendants or to the manufacturers of the brands identified as "Karaoke Klub," "Backstage," "Nutech," "Music Maestro," "Hot Stuff," or "Magic Tracks." With respect to the "Charter Buster" brand, which is manufactured by Tennessee Production Center, Inc. ("TPC"), conditional licenses were issued pursuant to settlements for claims of copyright infringement that were the subject of litigation in the United States District Court for the Eastern District of Tennessee. The conditional licenses that were issued became null and void as a result of TPC's default under the accompanying Settlement Agreements and, therefore, the "Chart Buster" brand of discs was also unlicensed during the relevant three year time frame in this cause. Docket No. 108, p. 5.

### 1. **Lynns Corp. Defendants**

As discussed above, the Lynns Corp. Defendants do not contest Plaintiffs' arguments on liability for direct copyright infringement "to the extent Lynns' suppliers did not have the proper licenses." The Lynns Corp. Defendants previously raised an affirmative defense that Plaintiffs' claims were precluded "to the extent that any allegedly infringing products are supplied, directly or indirectly, to Defendants by an entity or entities having express or implied licenses to the alleged copyrighted work . . . ." Docket No. 96, p. 6. As discussed above, however, the Lynns

11

Corp. Defendants have admitted they have no factual or legal basis to support such a claim. Ms. Burnett's Declaration, however, shows that no licenses were issued to any of the Defendants or manufacturers of the brands at issue in this case.

Based upon the Lynns Corp. Defendants' concessions and admissions, Defendant Lynns Corp. is liable for direct copyright infringement and Victor Tsai is liable for direct copyright infringement. Therefore, Plaintiffs' Motion for Partial Summary Judgment against the Lynns Corp. Defendants with respect to direct copyright infringement should be GRANTED.

### 2. **Lee Defendants**

The Lee Defendants have admitted that Sumakaya Corporation engaged in the distribution of "Plaintiffs' music," and they admit that Plaintiffs did not issue them licenses to distribute Plaintiffs copyrighted music. On the basis of these admissions, and the facts discussed above, Defendant Sumakaya Corporation is liable for direct copyright infringement. Plaintiffs' Motion for Partial Summary Judgment as to Defendants Sumakaya Corporation for direct copyright infringement should be GRANTED.

The Lee Defendants' concessions do not, in and of themselves, establish that Defendant Michael Lee is liable for direct copyright infringement, and Defendant Michael Lee argues that he should not be held personally liable for copyright any direct infringement committed by Sumakaya Corporation.

As Plaintiffs argue, however, Defendant Lee can be individually liable for his personal participation in tortious conduct, whether active or passive, even if he was acting in a capacity as a corporate officer. *Hagemeyer Chemical Co. v. Insect-O-Lite Co.,* 291 F.2d 696, 699 (6th Cir. 1961).

Courts that have found a corporate officer liable as a joint tortfeasor in copyright infringement cases have done so on the basis that: (1) the officer personally participated in the actual infringement, *H. M. Kolbe Co. v. Shaff,* 240 F. Supp. 588, 589 (S.D.N.Y.), aff'd per curiam, 352 F.2d 285 (2d Cir. 1965); or (2) the officer derived personal benefit from the infringing activities either as a major shareholder in the corporation, *Warner Bros.-Seven Arts, Inc. v. Kalantzakis*, 326 F.Supp. 80, 82 (S.D. Tex. 1971), or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement, *Shapiro, Bernstein & Co., Inc. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); or (3) the officer used the corporation as an instrument to carry out a willful and deliberate infringement of copyright, *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.*, 131 F.2d 809, 814 (7th Cir. 1942); or (4) the officer was a dominant influence in the corporation, and determined the policies which resulted in the infringement, *Tempo Music, Inc., v. International Good Music, Inc.*, 143 U.S.P.Q. 67 (W.D. Wash. 1964), aff'd sub nom., *K-91 Inc. v. Gershwin Publishing Corp.*, 372 F.2d 1 (9th Cir. 1967).

Defendant Lee initially argues that he can be personally liable only under principles related to piercing the corporate veil. Docket No. 166, p. 2. For this proposition, he cites *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed. Cir. 1996), a patent infringement case. The *Orthokinetics* Court, however, stated as follows:

> To determine whether corporate officers are personally liable for the direct infringement of the corporation under Section 271(a) requires invocation of those general principles relating to piercing the corporate veil.
>
> Infringement is a tort . . . and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically

13

> directed other officers, agents, or employees of the corporation to commit the tortious act . . . The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement.

*Id.* (Citations omitted).

The *Orthokinetics* Court also upheld the imposition of personal liability on the individual defendants where one of them was the President and sole stockholder of the company, and where the defendants were "directly responsible for the design and production of the infringing chairs and that they were the only ones who stood to benefit from the sales of those chairs." *Id*.

In the case at bar, it is undisputed that Defendant Lee was the sole officer, director, and shareholder of Defendant Sumakaya Corporation. He was the ultimate authority for making decisions at Sumakaya with regard to the products which were advertised, distributed, and sold by Sumakaya. He personally participated in the decision of Sumakaya to sell the brands of karaoke recordings and music copyrights at issue in this action. He was the ultimate authority for making the decision of Sumakaya to engage in the business of advertising, distributing, and selling karaoke discs bearing the brands of "Hot Stuff" and "Magic Tracks," during the relevant time period. He personally benefitted financially from the sales of unlicensed karaoke recordings, and he was the dominant influence in the corporation and determined the policies that resulted in the infringement.

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment as to Defendant Michael Lee, with regard to direct copyright infringement, should be GRANTED.

### B. Willful Copyright Infringement

Pursuant to 17 U.S.C. § 504(c)(1), a copyright holder may elect to recover, instead of

actual damages and profits, an award of statutory damages in a sum of not less than $750 or more than $30,000 for all infringements in the action with respect to any one work. If the infringement was committed willfully, the Court may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2). Defendants have elected to recover statutory damages. Docket No. 74.

Plaintiffs argue that copyright infringement is willful when a defendant knew or should have known that its actions constituted copyright infringement, citing two cases from the Second Circuit and a District Court case from New York. Docket No. 120, p. 15. Plaintiffs also argue that willfullness is shown where "the Defendant recklessly disregarded the possibility that its conduct represented an infringement," citing another case from the Second Circuit and a case from the Northern District of California. *Id*., p. 16. Moreover, Plaintiffs argue that willfullness need not be proven directly, but may be inferred from the defendant's conduct, again citing a case from the Second Circuit. *Id.*

The Lynns Corp. Defendants argue that the standard for determining willful infringement in the Sixth Circuit is different and that it requires that the infringement be done "with knowledge that the defendant's conduct constitutes copyright infringement." Docket No. 164-1, p. 4. The Lynns Corp. Defendants also argue that, even in cases where "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *Id*., *citing Princeton University Press v. Michigan Document Services, Inc*., 99 F.3d 1381, 1392 (6th Cir. 1996); *Zomba Enterprises, Inc., v. Panorama Records, Inc.*, 491 F.3d 574, 584-85 (6th Cir. 2007).

In their Reply, Plaintiffs acknowledge that the Sixth Circuit has not rendered a decision

15

adopting the view that "willful copyright infringement may be predicated upon a finding of constructive notice (as opposed to actual notice) of the likelihood of infringement. . . ." Docket No. 170, p. 6-7. Plaintiffs argue, however, that Judge Nixon has adopted such a standard in *King Records, Inc. v. Bennett*, 438 F.Supp 2d 812 (M.D.Tenn. 2006). Plaintiffs argue that, even though the Sixth Circuit has not adopted the "reckless disregard" standard set forth in *King Records*, "the Sixth Circuit Court of Appeals has cited to the same section of Nimmer [on Copyright] with approval regarding the concept of willful copyright infringement." Docket No. 170, p. 7. Plaintiffs argue that the Northern District of Ohio has adopted the reckless disregard standard as well. Plaintiffs argue that there is "every reason to believe" that the Sixth Circuit would adopt the reckless disregard standard of "*King Records.*" *Id*., p. 7-8.

This Court must apply the law as it exists in the Sixth Circuit. If the Sixth Circuit chooses to change the standard for willful infringement to "reckless disregard," or to "constructive notice," it certainly may do so. This Court, however, cannot adopt a different (and lesser) standard for willful infringement simply upon the argument that there is "every reason to believe" that the Sixth Circuit will do so.

Plaintiffs have presented no evidence to support a finding that any of the infringement at issue was done with knowledge that Defendants' conduct constituted copyright infringement.

Therefore, Plaintiffs' Motion for Summary Judgment as to the Lynns Corp. Defendants and as to the Lee Defendants, with regard to the issue of willful infringement, should be DENIED.

### C. Attorneys' Fees and Costs

As Plaintiffs correctly argue, 17 U.S.C. § 505 provides that the Court, in its discretion,

may allow the recovery of full costs by or against any party (other than the United States or an officer thereof), and the Court may also award a reasonable attorneys' fee "as part of the costs." As Plaintiffs also recognize, the awarding of attorneys' fees to the prevailing party is not automatic. Docket No. 120, p. 19, *citing Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994) (automatic awarding of fees would "pretermit the exercise of [the Court's] discretion"). Plaintiffs then argue that the awarding of attorneys' fees is appropriate where a defendant willfully infringes a plaintiff's copyright. Docket No. 120, p. 19. Additionally, Plaintiffs state, "The Court should exercise its discretion and award Plaintiffs costs herein *because Defendants willfully infringed upon Plaintiffs' copyrights . . . .*" Docket No. 120, p. 20 (emphasis added). Plaintiffs, however, present no authority for the proposition that attorneys' fees should be awarded in a case not involving willful infringement. Additionally, the Court notes that Plaintiffs did not address the subject of attorneys' fees and costs in their Reply.

As discussed above, the undersigned has recommended that Plaintiffs' Motion for Partial Summary Judgment with regard to willful infringement be denied. In view of this recommendation, and in view of the fact that Plaintiffs have not shown that they are entitled to a judgment as a matter of law for attorneys' fees and costs in a case not involving willful infringement, the undersigned recommends that Plaintiffs' Motion for Partial Summary Judgment with regard to attorneys' fees and costs be DENIED at this time.[5]

## VI. Recommendation

For the reasons discussed above, the undersigned recommends that Plaintiffs' Motion for

---

[5] If Plaintiffs prevail upon their willful infringement argument, they should be allowed to renew the Motion for attorneys' fees and costs.

Partial Summary Judgment (Docket No. 101) be GRANTED IN PART and DENIED IN PART as follows: The Motion should be GRANTED as to all Defendants with respect to direct copyright infringement, the Court finding that there is no genuine issue as to any material fact and that Plaintiffs are entitled to a judgment as a matter of law. The Motion should be DENIED as to all Defendants with respect to willful copyright infringement. The Motion should be denied as to all Defendants with respect to attorneys' fees and costs.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

‌_____
E. Clifton Knowles
United States Magistrate Judge